Byron M. KALMAKOFF, Petitioner,

v.

STATE of Alaska, Respondent.

No. S–13439.

Supreme Court of Alaska.

June 1, 2010.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

**Order**

**IT IS ORDERED:**

1. The petition in this case concerns whether certain statements made by the defendant, Byron Kalmakoff, were properly admitted during his criminal trial. Kalmakoff gave statements during a series of four interviews conducted by Alaska State Troopers sent to investigate the murder of a woman in the village of Pilot Point, Alaska when Kalmakoff was fifteen years old. Prior to his jury trial, Kalmakoff moved to suppress all of the statements made during these interviews. The trial court admitted statements made during the first half of the first interview and all statements made during the third and fourth interviews, but suppressed the remaining statements from the first interview because it found that Kalmakoff was in custody for the second portion of the first interview. The trial court also suppressed all statements made during the second interview because it found that Kalmakoff was in custody for the entire second interview, and the State conceded that Kalmakoff's right to remain silent had been violated by the troopers

interrogating him. Kalmakoff was convicted and sentenced in 2006.

■ 2. Kalmakoff appealed the trial court's partial denial of his motion to suppress, and his conviction was affirmed by the court of appeals.[1] The court of appeals affirmed the trial court's suppression of the second interview, describing the conduct of the troopers during this interview as "an egregious violation of *Miranda*."[2] The court of appeals did not decide whether the trial court had properly suppressed only a portion of the first interview, which was conducted without *Miranda* warnings, because it concluded that any error in failing to suppress the entire interview was harmless.[3] It held that Kalmakoff's decision to submit to the third and fourth interviews, during which he made critical admissions, was "sufficiently an act of free will to purge the ... taint"[4] of any *Miranda* violations in the first two interviews.[5] In making this determination, the court of appeals correctly looked to the factors articulated in *Halberg v. State*.[6]

3. Kalmakoff appeals the court of appeals decision, arguing that the third and fourth interviews are inadmissible because they are tainted by illegalities that occurred in the first two interviews. As the United States Supreme Court explained in *Brown v. Illinois*, "[t]he notion of the 'dissipation of the taint' attempts to mark the point at which the detrimental consequences of illegal police action become so attenuated that the deter-

rent effect of the exclusionary rule no longer justifies its cost."[7] Because of the pattern of violations in this case, including both failures to warn and a more significant violation of Kalmakoff's Fifth Amendment right to remain silent, we look to the factors listed in *Halberg* to determine whether Kalmakoff's decision to speak with the troopers was sufficiently insulated from the prior illegalities to escape their taint.[8]

4. In considering whether Kalmakoff's decision to participate in the third interview was influenced by statements obtained illegally in the first and second interviews, the court of appeals explained that Kalmakoff made "only two significant admissions during the first two interviews" and concluded that these revelations did not play a sufficiently important role in convincing Kalmakoff to participate in the third interview that suppression of the third interview was necessary.[9] We do not necessarily agree with this characterization of the inculpatory statements made in the first two interviews. Our review of the transcripts indicates that during the first half of the first interview, Kalmakoff made three highly significant admissions that may have influenced his later decision to confess in the third interview: that he was drinking on the night of the murder; that he and his cousin found the murder weapon in the house where the victim was sleeping and took it with them; and that he and his cousin returned to "check

1. *Kalmakoff v. State*, 199 P.3d 1188 (Alaska App. 2009).

2. *Id.* at 1202 (citing *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)).

3. *Id.* at 1201.

4. *Brown v. Illinois*, 422 U.S. 590, 602, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

5. *Kalmakoff*, 199 P.3d at 1201–03.

6. The court of appeals listed the following factors to determine whether a subsequent interview is sufficiently insulated from earlier illegalities to escape their taint:

the purpose and flagrancy of the initial illegal act, the amount of time between the illegal act and the defendant's subsequent statement, the defendant's physical and mental condition at the time of the subsequent statement, whether

the defendant remained in custody or was at liberty during this interval, whether the defendant had the opportunity to contact legal counsel or friends during this interval, whether the subsequent interview took place at a different location, whether the defendant's interrogators were the same officers who committed the prior illegal act, whether the evidence obtained from the prior illegal act affected the defendant's decision to submit to a subsequent interview, whether the police used lies or trickery to influence the defendant's decision, and whether there were other intervening events that affected the defendant's decision.

*Id.* at 1200–03 (quoting *Halberg v. State*, 903 P.2d 1090, 1098 (Alaska App.1995)).

7. *Brown*, 422 U.S. at 609, 95 S.Ct. 2254.

8. *Halberg*, 903 P.2d at 1098.

9. *Kalmakoff*, 199 P.3d at 1202.

on" the victim several times and the victim became angry with him. Kalmakoff also admitted during the illegal second interview that he was "scared" that he "did it."

5. The third interview began with the troopers asking Kalmakoff to bring his grandparents "up to speed on everything that [he] talked to [the troopers] about already." The troopers also specifically asked Kalmakoff about the gun and about checking on the victim—facts that the troopers initially discovered during the first half of the first interview with Kalmakoff. Because these earlier admissions may certainly have played a significant role in Kalmakoff's participation in the third interview, the taint analysis requires that we determine whether these earlier statements were obtained legally or if they were the result of an interview conducted in violation of *Miranda*.

6. The court of appeals' opinion reviewed cases in numerous jurisdictions and recognized that these cases are "virtually unanimous in recognizing that a directive or 'request' for a secondary school student to leave class for the purpose of being questioned by a police officer can result in a custodial interrogation for *Miranda* purposes." [10] Although the court of appeals recognized that Kalmakoff's age was a factor and that the transcript does not indicate that the troopers told Kalmakoff that he was free to leave or invited him to have his grandparents (his adoptive parents) present for the interview, it concluded that "it is clear that the circumstances leading to Kalmakoff's first interview with the troopers have not been sufficiently litigated, or clarified, to allow us to make an informed decision as to whether Kalmakoff was in custody (and thus entitled to *Miranda* warnings) at the beginning of [the first] interview." [11] The court of appeals pointed to two specific findings that it viewed as necessary for a custody determination to be made about the first interview: "what Etuckmelra [the village public safety officer who trans-

ported Kalmakoff from school to the interview] or the school principal may have said or implied to Kalmakoff regarding (1) whether he was required to leave school and attend the interview at the city office building, and (2) whether he was obliged to answer the troopers' questions if he did not wish to." [12]

 7. Our decision in *Hunter v. State* explained that "[c]ustody occurs if the suspect is physically deprived of his freedom of action in any significant way or is led to believe, as a reasonable person, that he is so deprived." [13] Three sets of facts are relevant to this determination: "those facts intrinsic to the interrogation," "[f]acts pertaining to events before the interrogation," and "what happened after the interrogation." [14] As the court of appeals recognized, the facts before and leading up to Kalmakoff's interview are therefore relevant and must be clarified before we can review the court's conclusion as to whether Kalmakoff was in custody for the entire first interview. In addition to those findings that the court of appeals highlighted, the trial court should also resolve the conflict in the testimony as to whether Etuckmelra provided Kalmakoff's grandmother with notice that he was going to be interviewed in connection with the victim's death. [15]

8. We **REMAND** this case to the trial court for consideration of these outstanding factual issues. We retain jurisdiction over this matter and will consider it once the trial court has made the requested findings of fact.

Entered at the direction of the court.

---

10. *Id.* at 1197–99.

11. *Id.* at 1199.

12. *Id.* at 1199–1200.

13. 590 P.2d 888, 894–95 (Alaska 1979) (quoting *People v. Arnold*, 66 Cal.2d 438, 58 Cal.Rptr. 115, 426 P.2d 515, 521 (1967)).

14. *Id.* at 895.

15. *Kalmakoff*, 199 P.3d at 1196.